UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TRC ENVTL. CORP.,

    Plaintiff,

v.

WATERSIDE DEV. CORP. and
WATERSIDE CONSTR., LLC,

    Defendants.

Civ. No. 2:16-374 (WJM)

OPINION

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff TRC Environmental Corporation ("TRC") filed suit against Defendants Waterside Development Corporation and Waterside Construction, LLC ("Waterside"), alleging Waterside broke its promise to pay TRC for its environmental consulting services.[1] TRC now moves for summary judgment under Federal Rule of Civil Procedure 56. The Court has jurisdiction under 28 U.S.C. § 1332 and decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons below, the motion is **GRANTED**.

**I.    BACKGROUND**

This case stems from the Borough of Edgewater, New Jersey ("Borough"), awarding Waterside a public contract to build outdoor recreational facilities at a park known as Veterans Field (the "Site"). TRC SMF ¶ 4, ECF No. 24-1. During construction, Waterside used crushed concrete fill material which was later found to contain high levels of PCBs (polychlorinated biphenyls). *Id.* ¶¶ 7–9. The Borough then removed Waterside from the Site, filed a separate lawsuit against Waterside, and hired another environmental contractor to assess the extent of the PCB impact. *Id.* ¶¶ 11–12. Once soil sampling and testing showed contamination, the Borough directed its new contractor to remove the PCB-impacted soils. *Id.* ¶ 13.

---

[1] TRC asserts payment liability rests solely with "Waterside Construction, LLC," not "Waterside Development Corporation." Pl.'s Mem. of Law in Support of Mot. for Summ. J. 4 n.1, ECF No. 24-7 ("Pl.'s Mem."). Also, Waterside's owner, Fred Daibes, affirmed that "Waterside Development Corporation" never existed as an entity. Certification of Jason Shafron, Esq. ("Shafron Cert."), Ex. A, Deposition of Fred Daibes 8:19–9:5, July 28, 2017 ("Daibes Dep."), ECF No. 26-3.

Before the excavation began, Waterside entered into a written agreement with TRC to protect its interest in litigation against the Borough (the "Contract). *Id.* ¶ 14. No longer allowed on the Site, TRC would serve as Waterside's eyes in the field to ensure the Borough charged Waterside only for removal of specific contaminated soil that traced back to the fill material Waterside used. *Id.* ¶ 15. In exchange for payment at rates set forth in the Contract, TRC would: (1) review documents to gain an understanding as to the Borough's excavation efforts and (2) serve as a daily project monitor over the Borough's soil removal activities. *Id.* ¶ 17.

For its work performed, TRC prepared monthly invoices, mailing Waterside a copy of its bill. Aff. of Rebecca Hollander ¶¶ 12–13, ECF No. 24-2 ("Hollender Aff."). Waterside claims to have never received the invoices. Waterside Counter SMF ¶ 25, ECF No. 26-1. Instead, Waterside claims it received the invoices upon the parties' business relationship ending which prompted its objections to the amount owed. *Id.* ¶¶ 25–26.

TRC now moves for summary judgment, arguing Waterside's refusal to pay constitutes breach, so it seeks damages in the amount of $118,121.28 for services rendered, with interest at the Contract rate of 1.5% from the date of breach, and reasonable attorney's fees to recover costs incurred in enforcing its contractual rights. *See* Pl.'s Mem. 4–7, 12. In all, TRC finds Watersides' contention that it had to perform its own split sampling on the soil and fill material without merit since nowhere does the Contract compel TRC to conduct independent testing. This absence of a testing requirement vitiates Waterside's counterclaims and defenses. *Id.* at 8–11.

In opposition, Waterside argues that genuine issues of fact preclude summary judgment. Waterside disputes the amount owed and work performed, counterclaiming that TRC insufficiently staffed the project and never conducted split sampling for concrete or concrete byproducts, thus breaching its duty and breaking its promise to perform. *See* Defs.' Opp'n Br. 3, 7–13, ECF No. 26. In reply, TRC reiterates its original argument that nowhere did the Contract contain a testing requirement. And TRC argues that Waterside cannot use extrinsic evidence or post hoc communications to alter terms when the Contract represented the final and complete understanding between the parties. *See* Pl.'s Reply Br. 2–6, ECF No. 27.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In its review, the Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

### A. TRC has established its breach of contract claim.

To prevail on a breach of contract claim under New Jersey law, TRC must show: (1) the existence of a valid contract; (2) how Waterside failed to perform under the contract; and (3) a causal relationship between the breach and the resulting damages.[2] *See Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985) (footnote omitted)). Third Circuit precedent shows acceptance of a "basic common law principle that a contract is unambiguous if it is reasonably capable of only one construction." *Tamarind Resort Assocs. v. Gov't of Virgin Islands*, 138 F.3d 107, 489 (3d Cir. 1998) (citing cases).

Waterside cannot identify any evidence that creates a genuine dispute of material fact as to whether TRC performed its contractual obligations. On the contrary, the Contract plainly set out the agreed-upon terms, conditions, and scope of work. Nowhere does the Contract compel TRC to perform split sampling or soil testing for concrete or concrete byproducts. Further, Waterside identifies no specific facts to rebut its failure to contest TRC's invoices within the Contract's prescribed timeframe.

Next, the Court finds Waterside's attempt to use extrinsic evidence to aid in interpreting the Contract unpersuasive. Like here, "[w]here the parties have made the writing the sole repository of their bargain, there is the integration which precludes evidence to antecedent understandings and negotiations to vary or contradict the writing." *Atl. N. Airlines v. Schwimmer*, 96 A.2d 652, 657 (N.J. 1953). Also, Waterside argues its post hoc conduct, such as email exchanges and Daibes' conversation with TRC's representatives, shows that Waterside wanted TRC to conduct split sampling. But even accepting those contentions as true, such subsequent discussions fail to meet the Contract's term requiring both parties to agree in writing to changes in performance. *See* Hollender Aff., Ex. 6, Cl. 22. And Daibes' expressed dissatisfaction over TRC's failure to conduct testing and how such inaction would weaken Waterside's ability to defend itself in a separate lawsuit filed by the Borough falls short in showing a genuine issue of material fact. *See* Daibes Dep. 27:14–15, 46:3–12, 55:18–21, 56:1–6, 60:12–20, 61:6–24, 63:6–13. Further, nothing in the record suggests the parties made an agreement that superseded or modified the Contract.

Finally, it is undisputed that Waterside's refusal to pay caused TRC to suffer damages. Under the Contract, Waterside had 15 days from receipt to notify TRC of objections to the invoiced amounts. Hollender Aff. ¶ 17, Ex. 6, Cl. 2.2. TRC's Complaint contains a calculation of damages reflecting $118,121.28 as the amount owed. *See* Compl., Exs. A–B, ECF No. 1. And the Contract allows TRC the right to collect pre-judgement interest at the Contract rate of 1.5% per month from the date of breach and reasonable attorney's fees. *See* Hollender Aff., Ex. 6, Cl. 2.3. Thus, TRC has established its breach of contract claim.[3]

---

[2] New Jersey law governs this Contract dispute. *See* Hollender Aff., Ex. 6, Cl. 20.

[3] Because the breach claim affords complete relief, the Court need not decide TRC's account stated and *quantum meruit* claims. *See Carter Ledyard & Milburn LLP v. Carrascosa*, No. 07–3216,

### B. Waterside's counterclaims and defenses lack merit.

Waterside's counterclaims pivot on a belief the Contract called for TRC to perform split sampling of the concrete fill material, soil, or both, which the Court has concluded otherwise. This fact irrevocably poisons Waterside's counterclaims for breach of contract, violation of the covenant of good faith and fair dealing, promissory estoppel, negligence, and indemnity. Likewise, with TRC prevailing on the breach of contract claim, Waterside's affirmative defenses lack merit.

No term in the contract called for TRC to conduct its own testing. Ignoring this fact, Waterside fills the record with testimony illustrating Daibes' unhappiness over TRC's performance. The highlights include: (1) how Daibes saw no need for an "expert report" based on "some high school kid taking pictures," Daibes Dep. 38:3–19, (2) how TRC's daily Site monitoring defied "logic" when the key activity to observe—the removal of concrete fill material—was not a daily occurrence, *id.* 54:4–55:21, (3) how Daibes asserted in post hoc discussions of a need to conduct split sampling, *id.* 43:20–44:22, and (4) how "[He] didn't want to pay [TRC] anything." *Id.* 66:5. Even so, Daibes' perceptions, beliefs, and personal opinions cannot be considered sufficient evidence to create genuine disputes of material fact. *See Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (noting a party must present concrete evidence, beyond mere speculation, to support its allegations). And even if Waterside lodged objections upon receiving TRC's invoices at the end of the parties' relationship, Waterside has failed to marshal evidence that would identify a triable issue of fact.

### IV. CONCLUSION

Accordingly, the Court **GRANTS** TRC's motion for summary judgment finding Waterside liable for breach of contract in the amount of $118,121.28. Within 10 days from the date of the accompanying order, Plaintiff is directed to submit to the Court a proposed Final Judgment and a specification of its recoverable attorney's fees and costs, including an appropriate itemization for same. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Dated: July 24, 2018**

---

2010 WL 3703699, at *4 (D.N.J. Sept. 10, 2010) (noting that a prevailing breach of contract claim mooted the account stated and *quantum meruit* claims, which sought the same damages).